## COLUMBUS CLUB v. SIMONS.

No. 15121—Opinion Filed Feb. 17, 1925.

Rehearing Denied May 5, 1925.

1. **Specific Performance—Contract to Loan Money to Improve Real Estate—Sufficiency of Petition.**

Petition of plaintiff alleges defendant proposed to loan to plaintiff sufficient money to erect a clubhouse, not to exceed $125,000, the loan to be secured by mortgage on the land and building. The proposal was accepted by plaintiff and the contract reduced to writing; relying upon the contract, defendant sold its old clubhouse, purchased other lots of land upon which to erect the new clubhouse; made a contract with an architect for plans and specifications, and defendant paid the architect the sum of $3,000 on account. Plaintiff entered into a contract with D. to erect the clubhouse for the sum of $96,000. Plaintiff met all the requirements of defendant, such as reincorporating, etc., and in June defendant informed

plaintiff it could get the money September 1, 1921. Plaintiff executed its note for $125,000 bearing 8% interest secured by mortgage on the land upon which the building was to be erected. Defendant accepted the note and mortgage; plaintiff purchased personal property for the clubhouse, which it still has on hand. On September 1st, defendant defaulted and refused to deliver the money, but still retains the note and mortgage. Plaintiff's petition prays judgment for specific performance of the contract, or if the same is impracticable or impossible, that it have an alternative judgment against defendant in a sum not exceeding the cost of constructing the clubhouse, as damages. Held, the petition stated an equitable cause of action, good as against a general demurrer.

## 2. Same—Relief in Equity—Damages in Lieu of Specific Performance.

Where a court of equity rightfully acquires jurisdiction, in an action for specific performance, and specific performance is found to be impossible or impracticable, equity will retain the cause and award such damages, if any, as the proofs warrant.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by the Columbia Club against George A. Simons for specific performance of written contract relating to land, and praying alternative judgment in damages if specific performance could not be decreed. Defendant filed a general demurrer, which was by the court sustained, and plaintiff appeals. Reversed and remanded.

R. E. Simpson and Hummer & Foster, for plaintiff in error.

Dick & Pitchford, for defendant in error.

Opinion by RUTH, C. The parties to this action occupy the same relative position in this court as they did in the trial court, and will be designated as plaintiff and defendant, respectively.

Plaintiff alleges in its petition that it is an incorporated club, and owned a "home" or clubhouse in the city of Okmulgee, and defendant offered to loan the corporation sufficient money to construct a suitable clubhouse provided the corporation would execute a mortgage on the property purchased and erected, as security for the loan. The offer was duly accepted and the offer and acceptance reduced to writing and duly executed by both parties.

Thereafter the plaintiff sold its old clubhouse and the land on which it was constructed and purchased other lots in Ok-mulgee, and executed a note and mortgage to defendant in the sum of $125,000. The club was reorganized at the suggestion of defendant, who made several objections and suggestions as to various details, all of which were met and complied with by plaintiff. Plans and specifications were prepared and defendant paid the architect $3,000 on account. The contract for the construction of the club house was then awarded to John Dennehey for the sum of $96,000, and Dennehey proceeded to make his subcontracts with materialmen and subcontractors.

The directors of the corporation held a joint meeting with Simons in June, 1921, and Simons made no further objections, but stated he would not be able to advance the money until September 1, 1921, and on the last said date he defaulted and breached his contract by failing to furnish the money necessary to erect the building, and in July, 1923, this action was filed praying specific performance of the contract to loan the money, and further prays that if the defendant refuses to furnish the money to construct the clubhouse, that "plaintiff be given judgment against the defendant for a sum equal to the amount the defendant is required to furnish this plaintiff under and by virtue of the terms of said contract."

It appears that, while the note and mortgage was for $125,000, defendant was to furnish only sufficient money to complete the building, not to exceed the sum set forth in the note and mortgage.

Plaintiff then alleges it is threatened with numerous lawsuits, by the various contractors, but it does not know what its damages will be, or how much it will have to pay if these suits are ever filed and successfully prosecuted; that it has considerable property on hand, purchased by reason of the contract with defendant; that this property is depreciating in value, and if plaintiff is forced to dispose of it, plaintiff does not know what it will bring on the market, and has no means of estimating its damages in this behalf. Plaintiff then alleges its contract with Dennehey was in the sum of $96,000 for the erection of the clubhouse and prays damages.

Plaintiff first prays for specific performance, and in the event specific performance is impracticable or impossible, that it have judgment against the defendant in damages in a sum equal to the cost of the construction of the completed building.

To this petition defendant filed his demurrer for that:

"First, the said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant; and, second, said petition does not state facts sufficient to entitle plaintiff to the relief prayed for therein."

The demurrer was by the court sustained, and this cause is brought before this court regularly for review.

The question to be determined by this court is, Does the petition state a cause of action, either for specific performance of the contract to loan the money or for damages for its breach?

Defendant assumes the position that a contract for the lending or borrowing money cannot be enforced, and as a genral or abstract proposition this is true.

In Pomeroy's Equity Jurisprudence, vol. 5, page 4888, and in 36 Cyc. 556b, the rule is stated as follows:

"An agreement to borrow a sum of money and give security for it cannot be specifically enforced, since plaintiff's loss by failure to get as good an investment for his money as that contracted for is a mere matter of calculation for a jury," citing Conklin v. Peoples Building Assn., 41 N. J. Eq. 20, 2 Atl. 615; Bradford, etc., Ry. Co. v. N. Y., etc., R. Co., 123 N. Y. 316. 25 N. E. 499, 11 L. R. A. 116; South African Territories v. Wallington A. C., 309—67 L. J. Q. B. 470, 78 L. T. Rep. (N. S.) 426, 14 T. L. R. 298, 46 Wkly. Rep. 545; Larios v. Gurety, L. R. 5 P. C. 346; Western Wagon, etc., Co. v. West, 1 Chi. 271, 61 L. J. Ch. 244, 66 L. T. Rep. (N. S.) 402, 40 Wkly. Rep. 182; Sickel v. Mosenthal, 30 Beav. 371, 8 Jur. N. S. 275, 31 L. J. Ch. 386, 5 L. T. Rep N. S. 784, 10 Wkly. Rep. 283, 54 Eng. Reprint, 932.

From our research the authorities cited appear to be the leading American and English cases on the question of enforcing by specific performance, a contract for the loan of money. There are other cases, but they all have the same general trend as the ones herein cited, but they do not fall within the purview of the petition in the case under consideration.

Conklin v. Peoples Building Ass'n, supra, was an action wherein it was sought to obtain judgment for specific performance to loan plaintiff money to erect a building.

The committee representing the building company approved the loan but the title was found to be defective, and although the plaintiff had moved out of the building then on the land, had discontinued her business, caused her tenants to move, and had made a contract with a house mover to move the old building, plaintiff could not specifically enforce the contract for the loan, there being a defect in the title.

An examination of all American cases discloses they were straight out contracts for the loan of money, and either because of defective title, or mere disinclination on the part of the lender to advance the money, the loan was not consummated, and damages were easily ascertainable, and our courts have universally held that plaintiff should pursue his remedy for damages at law, and have refused to decree specific performance.

In Sickel v. Mosenthal, supra (an English case), plaintiffs were commission merchants and defendant was to be taken into the firm as a partner, and was to advance or loan certain money to plaintiffs. Defendant defaulted and action was brought for specific performance, which was denied by the Master of the Rolls and plaintiffs left to their action at law for damages sustained, if any.

Western Wagon, etc., Co. v. West, supra, was an action for specific performance to compel an advance of 500 pounds. Defendant had advanced 7,500 pounds and agreed to advance or loan a total of 10,000 pounds to one Pinfold. The loan was secured by mortgage. Pinfold afterwards obtained a loan from plaintiffs, secured by second mortgage and assigned "future advances" to be made by West, to plaintiffs, who attempted to enforce the contract for future advances by suit for specific performance.

Chitty, J., said:

"A court of equity will not decree specific performance of a contract to make or take a loan of money. whether the loan is to be on security or not. This was decided by Sir John Romilly in Rogers v. Challis (4) and Sickel v. Mosenthal, (5) and these decisions were approved by the Privy Council in Larios v. Bonany & Gurety (3).

"In other words, a court of equity will not compel the intended lender to make, or the intended borrower to take, the loan, but will leave the parties to such a contract, to their remedies by action at common law for damages."

It was further urged in the Sickel Case, that if they are not entitled to recover the specific sum, they were entitled to damages for breach of contract, but their action was not framed for any such purpose, and there was no suggestion of damages and the appeal was dismissed.

South African Territories v. Wallington, supra, appears to be a leading English case on the question being now considered. That was a case where the company issued a prospectus offering the public an issue of 75,000

pounds at 6 per cent. first mortgage debentures of 50 pounds each, repayable on December 31, 1900. The debentures were to be payable 10% on application, 15% on allotment, 25% two months after allotment, 25% four months after allotment, and 25% six months after allotment. Defendant made application for an allotment of 16 debentures and paid 80 pounds on application, but refused to make further payment, hence the suit for specific performance.

Wright, J., held the claim for specific performance could not be sustained, but gave judgment for plaintiffs for balance on the ground that a debt had been created by defendant's promise to pay contained in his letter of application.

The Court of Appeals reversed the judgment and the cause was appealed to the House of Lords, where the case was decided March 18, 1898.

"The Lord Chancellor (Earl of Halsbury) said:

"The application for debentures on the face of the instrument contracts to pay something, but the real nature of the whole transaction is an agreement by the application to lend money at a certain rate of interest, and the action in this case was in truth mainly, if not altogether, directed to compel the intending lender to perform his contract to lend, which undoubtedly he had refused and neglected to do. With respect to the claim for specific performance, a long and uniform course of decisions has prevented the application of any such remedy, and I do not understand any court, or any member of any court has entertained a doubt but that the refusal of the learned judge below to grant a decree for specific performance was perfectly right. But, of course, in this, like any other contract, one party to the contract has a right to complain that the other party has broken it, and if he establishes that proposition, he is entitled to such damages as are appropriate to the nature of the case."

Lord Herschall, concurring, thought, as no evidence of damages was introduced, the 80 pounds paid by defendant on application for the debentures was sufficient.

Lord Macnaughten and Lord Morris also wrote concurring opinions. Lord Morris concluding his opinion, said:

"I am equally clear that the company was entitled to recover on the third head of claim for damages to such amount as they gave evidence in support of."

The Court of Appeals was sustained and the appeal to the House of Lords dismissed.

The foregoing cases are set forth at some length, for the purpose of distinguishing the cases falling under the general rule from the case now under review.

While, as a general rule, specific performance of a contract for the loan of money or for the delivery of personal property under contract will not be decreed, it has nevertheless been universally held that circumstances and conditions may bring the case within the exception to the general rule, and it is a ground of jurisdiction to decree specific performance "that there is no basis on which a jury can estimate the damages." 36 Cyc. 563; St. Regis Paper Co. v. Santa Clara Lumber Co., 173 N. Y. 149, 65 N. E. 967; Palmer v. Graham, I Pars. Eq. Cas. (Pa.) 476; Oakland v. Hackley, 92 Fed. 38; Stuart v. Pennis, 91 Va. 688, 22 S. E. 509.

The question then arises, Are the allegations of plaintiff's petition such as bring it within the exception to the general rule?

Plaintiff alleges the offer by defendant to loan enough money to build a clubhouse, not to exceed $125,000; the offer is accepted by plaintiff and the contract is reduced to writing and signed by both parties; plaintiff reincorporates at the request of defendant and does all things suggested by defendant; the parties met in June and defendant had no further objections to offer, and advised plaintiff it could have the money September 1st. The defendant sold its clubhouse and purchased other lots upon which to erect a new clubhouse; plans and specifications were drawn, for which defendant paid the architect $3,000 on account; a contract is entered into by plaintiff with one Dennehey, who agrees to erect the building for $96,000, and plaintiff made purchases of personal property and all preparations were made to erect the building. Plaintiff executed its note for $125,000 and its mortgage on the lots purchased, to secure the payment of the note. The note and mortgage were accepted by the defendant, who still retains the same, but refuses to advance the money to construct the building.

We think the allegations of the petition place the case squarely within the exceptions to the general rule announced in the foregoing cases. The defendant, upon the strength of his promises, has secured title to the plaintiffs land and still retains it. True it is that there is a defeasance clause in his instrument of conveyance, and his title may be defeated by the payment to defendant of $125,000, plus interest at the rate of 8 per centum per annum. Defendant may be divested of his defeasible title in three ways: First, by his voluntary relinquishment of the

note, and release of the mortgage; second, by action brought by plaintiff to cancel the note and mortgage and quiet title; third, by payment of the face of the note plus accrued interest.

As defendant has accepted the defeasible title to the land and has unquestionably breached his contract, the case resolves itself into a contract for the conveyance of the interest in land, and falls within the jurisdiction of equity to decree specific performance of the contract, as plaintiff cannot be permitted to accept all the benefits, and not assume any of the burdens.

"Where land or any estate or interest in land is the subject-matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend upon the inadequacy of the legal remedy in the particular case. It is as much a matter of course for courts of equity to decree a specific performance of a contract for the conveyance of real estate, which is in its nature unobjectionable, as it is for courts of law to give damages for its breach." 36 Cyc.

The doctrine there laid down has been approved by the state courts, the Supreme Court of the United States, and by the courts of last resort of Canada and England.

So far has the doctrine of specific performance been carried that courts will, under certain conditions, decree specific performance, where land is involved, even though the agreement is in parol.

"A parol agreement for the sale of land will be specifically enforced where there has been such a part performance as would make it impracticable to place the parties in their original position." Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118; affirmed (1906) 202 U. S. 286, 50 L. Ed. 1032, 26 Sup. Ct. 610.

"A suit in equity may be maintained to enforce specific performance of an oral contract for the conveyance of land, where the moving party has fully performed the terms of such contract on her part." Corder v. Purcell, 50 Okla. 771, 151 Pac. 482; King v. Gant, 77 Okla. 105, 186 Pac. 960; Cannon v. Unruh, 84 Okla. 36, 202 Pac. 182; Johnson v. Baldock, 83 Okla. 285, 201 Pac. 654."

In the case under review, the contract was in writing, executed by both parties. It is impossible and impracticable to place the plaintiff in its original position. It has sold its clubhouse, and is homeless. It purchased other lots upon which to erect its building, entered into a contract for construction, purchased materials or personal property, had plans and specifications prepared for which defendant paid the sum of $3,000 on account, reincorporated, and met every condition imposed by the defendant, and transferred its newly purchased lots to the defendant, who still retains title to the same.

We fail to find any reason for a unilateral application of the doctrine of specific performance in favor of a vendee.

The vendor has rights as sacred and inviolable as the vendee, and when vendor has met and complied with all the conditions and has parted with its title, and title is retained by vendee, and has so altered its position as to make it impracticable or impossible to restore it to its former position, a petition setting forth these facts states such a cause of action as will authorize a court of equity to decree specific performance, and if, upon the evidence, specific performance is found impossible or impracticable, equity may retain the cause and award such damages as the evidence warrants, provided the plaintiff did not know, at the time of filing his action, that specific performance was impossible.

"In this country the rule is generally accepted that although the disability existed at the time of bringing the suit, the case may be retained for the assessment of damages, provided plaintiff brought his bill in good faith, without knowledge of the disability, supposing and having reason to suppose himself entitled to specific performance.

"In accordance with the general rule that damages may be given to a plaintiff who is ignorant that specific performance cannot be decreed, damages have been awarded where the court, in the exercise of its discretion, refuses specific performance because of the great hardship of that relief to defendant, or because the enforcement of the decree would be useless or impracticable." Speer v. Erie R. Co., 68 N. J. Eq. 615, 60 Atl. 197; Cincinnati Southern R. Co. v. Hooker, 26 Ohio Cir. 392.

In the instant case there was no suggestion at any time, by the defendant, that compliance with the terms of his contract was impracticable or impossible. The parties all met in the latter part of June and defendant assured plaintiff it would get its money September 1st, and defendant accepted title to plaintiff's land.

It is true. equity will not decree a vain, idle, foolish, or frivolous thing. It will not decree the impossible, but once rightfully having acquired jurisdiction, it will retain the same and award damages, where specfic performance cannot be enforced.

"Where in a suit for specific performance of an alleged municipal contract and for injunction to restrain performance of a contract with complainant's competitor, the

work was accomplished pendente lite, equity had jurisdiction to allow damages in case complainant was entitled to recover under a prayer for general relief." McCormack v. Oklahoma City, 203 Fed. 921, 122 C. C. A. 215, 35 S. Ct. 455, 236 U. S. 657, 59 L. Ed. 771.

It may develop in the trial of this case that specific performance is impracticable or impossible, but the defendant has undoubtedly breached his contract, and plaintiff is entitled to such damages as it may prove, as it would be inequitable and unjust to close the doors of the court against the plaintiff and deny its redress for breach of a written contract. solemnly entered into by both parties with full knowledge of all its provisions; with full knowledge of its benefits and its burdens.

In view of the authorities herein quoted from and cited, and in equity and good conscience, the judgment of the court below should be reversed and remanded, with instructions to the trial court to overrule the demurrer. reinstate plaintiff's petition, and proceed to trial, and hear and determine this cause, and to render such judgment as the proof warrants.

By the Court: It is so ordered.