HOLT v. ALEXANDER.

No. 34944.   Sept. 16, 1952.

*248 P. 2d 228.*

Herschel L. French and Frederick J. Hoyt, Oklahoma City, for plaintiff in error.

Paul Pugh and Darrell Winings, Oklahoma City, for defendant in error.

PER CURIAM. Grace Alexander, hereinafter referred to as plaintiff, brought this suit against Virgil Holt, as administrator of the estate of James H. Holt, deceased, hereinafter referred to as defendant, alleging that on September 15, 1940, James H. Holt, stepfather of the plaintiff, orally agreed that if the plaintiff would move into the premises at 3423 North Barnes Avenue, Oklahoma City, Oklahoma, owned and occupied by James H. Holt and his wife, who was the plaintiff's mother, and live with, watch after, care for, and nurse the stepfather and mother during the declining years of their lives, the said James H. Holt would will the said real estate to the plaintiff. Plaintiff further alleges performance on her part and failure of Holt to fulfill his oral agreement. Plaintiff seeks specific performance of such alleged oral agreement. The defendant answered by a general denial.

Upon the trial, the plaintiff testified that she moved in with her mother and stepfather in February, 1941, after quitting a job that she had held for sixteen years; that she lived with and cared for them, prepared meals, and cleaned the house until their deaths in June, 1949; that during that time, Mr. Holt was a semi-invalid, and the mother was in very poor health; that Holt gradually got worse and went to the Will Rogers Hospital for about three months and then to a rest home not long before he died. The mother broke her hip in 1948 and was not able to get around after that; that before moving into the Holt home, the plaintiff had a conversation with her mother and stepfather; that during the time the plaintiff stayed with the Holts, she was away three months at one time on account of her son's illness. Plaintiff is 56 years old and continued to occupy the property after the death of the Holts in 1949. Holt was 79 years old when he died, and the plaintiff's mother was 77 years old when she died.

Various witnesses testified that the plaintiff looked after the mother and stepfather until they died, and, in addition thereto, these various witnesses testified as to statements made by Holt, as follows:

"He told me he had this room built on for Grace so that they would have more room at the house and she could take care of them as long as they lived. She was supposed to do that. He said that in return he was going to leave her the property."

"They had always told me that Mrs. Alexander was to get the place."

"He just said that Grace had tended to them and had lived there and that she would fall heir to his property."

"In fact this is to be Grace's home when we are gone."

"Then Mr. Holt said, 'Yes, we are awful lucky,' and he said that was to be Grace's home when they had no more use of it."

The trial court found generally for the plaintiff, and ordered the defendant to convey the property to the plaintiff.

The defendant contends that an action for specific performance of an oral contract to devise real property by a

will is within the statute of frauds. This is ordinarily true; however, complete performance of such an oral agreement on the part of the party seeking to avail himself of its benefits takes the case out of the operation of the statute of frauds. King v. Gant, 77 Okla. 105, 186 P. 960; Eggstaff, Adm'x. v. Phelps, 99 Okla. 54, 226 P. 82; Fox v. Fox, 117 Okla. 46, 245 P. 641; and Robinson v. Haynes, 147 Okla. 95, 294 P. 803. See, also, Brooks v. Yarbrough (10th Cir.) 37 F. 2d 527. We believe it is apparent from the facts detailed above that the plaintiff had fully performed all of the conditions of the alleged agreement up to the time of the deaths of Mr. and Mrs. Holt. The defendant corroborates the fact that the Holts were in ill health, and that the plaintiff stayed with them except for two short intervals. During one of these intervals, the plaintiff's son was sick and she was gone for two or three months. Applying this rule of law to the present case, we are of the opinion that the suit may be maintained, and that the only two things remaining to be determined are whether or not a contract was actually made and whether or not this is a case in which specific performance is proper. The defendant contends that the plaintiff offered no evidence to show that the decedent orally agreed to devise any real estate to the plaintiff. Such an oral agreement is necessary in order for there to be a legal obligation on the part of Holt to devise the property to the plaintiff. The degree of proof necessary to prove such an oral contract is set forth in the case of Robinson v. Haynes, supra, as follows:

" 'Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character.' " Pancoast v. Eldridge, 134 Okla. 247, 273 P. 255."

In applying this rule of law to the facts in the present case, the trial court necessarily found that the oral agreement had been established by sufficient evidence, and in an equitable action the presumption is in favor of the trial court's finding, which will not be set aside unless it is against the clear weight of the evidence. Stow v. Bruce, 178 Okla. 127, 61 P. 2d 1043. It, therefore, becomes necessary for us to determine whether or not the judgment is reasonably supported by the evidence and whether or not the judgment of the trial court is against the clear weight of the evidence. We have reviewed the cases cited in the briefs, as well as other cases, in an effort to determine just what evidence has been recognized by the courts as sufficient to meet the above requirement in cases involving facts similar to this case. Most of the cases involve a ruling on the pleadings, the evidence, or the testimony of some third party who was present when an oral agreement was made. These cases are of very little help in analyzing the testimony in the present case; however, the case of Fox v. Fox, supra, involved similar facts and a similar line of testimony. The following quotation from this case sets out the testimony which was held sufficient to support an oral contract under the law as it exists in this state:

" * * * Motion for new trial was filed and overruled, and defendant assigns as error that the evidence was insufficient to sustain a judgment in favor of plaintiff.

"Ten witnesses testified for plaintiff, including one son and daughter of deceased. These witnesses had known deceased and were his immediate neighbors for upwards of 30 years, and they testified that ever since J. N. Fox purchased this land he had always spoken of the south half as Ross' (this plaintiff's) land, and while plaintiff was erecting the house on the south half and digging wells, J. N. Fox sat around the place and spoke of the improvements as being on Ross' land, and one of the witnesses, in the presence of plaintiff and J. N. Fox, said 'Well, if this is Ross' land, Ross ought to have a deed to it'; and J. N. Fox said: 'Oh, me and Ross has that all fixed in black and white. Ross has stayed with me

and helped me pay the land out and he gets it when I die.'

"Even the defendants' witness, Eugene Fox, a brother of plaintiff, though testifying his father had authorized Ross to put $500 worth of improvements on the south half, he nevertheless testified on cross-examination that deceased had often said 'Ross,' this plaintiff, was to get this south half when the father died, as Ross had stayed with the father and worked the father's farms and paid off the debt. It appeared further from the evidence that J. N. Fox mortgaged the home place as well as the southwest quarter of section 33, and plaintiff managed the farms and cleared up and paid off these mortgages.

"The oral contract between the father and this plaintiff is fully established by competent evidence which is uncontroverted. It is further proven plaintiff performed all the conditions of the agreement and paid off the mortgages on the old home place and off the 160 acres, and placed permanent improvements on the south half of the value of $1,500 to $2,000, under an agreement that the 80 acres, or the south half, should be the plaintiff's property upon the death of his father. * * *"

The evidence in the case at bar establishes a contract as clearly as, if not more clearly than, the evidence in the Fox case. In view of the holding of this court in the Fox case, we believe that the evidence establishes the contract sufficiently to have warranted the trial court in decreeing specific performance.

The last matter to be determined is whether or not specific performance is warranted under the existing circumstances. Specific performance is proper if one party to a parol agreement has performed the agreement on his part so that its nonfulfillment by the other is a fraud. Purcell v. Corder, 33 Okla. 68, 124 P. 457. It is likewise proper where one party has performed and the nature of the services rendered are such that their value cannot be estimated in money value, and the proof shows that the parties did not so intend. Eggstaff, Adm'x, v. Phelps, 99 Okla. 54, 226 P. 82; Brooks v. Yarbrough, C.C.A. 10th Circuit, 37 F. 2d 527. The trial court found for the plaintiff upon this point and granted specific performance. The discretion which the trial court has in this regard is set out in Syllabus 1 in the case of Robinson v. Haynes, supra, as follows:

"Whether equity will decree the specific performance of a contract rests in judicial discretion and always depends upon the facts of the particular case. As a rule, when a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on the ground of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable."

We believe the nature of the services performed by the plaintiff and her personal attention to the needs of her mother and her stepfather and the companionship which she gave them cannot easily be measured in money value. Certainly, the parties did not so intend. We, therefore, conclude from a consideration of the entire record that the judgment of the trial court is reasonably sustained by the evidence.

The cause is, therefore, affirmed.

This court acknowledges the services of Attorneys John Ladner, Allen King and G. Ellis Gable, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council and appointed by the Court.

ARNOLD, C.J., HALLEY, V. C. J., and CORN, GIBSON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.